IN RE ELECTION OF NOVEMBER 6, 1990 FOR THE OFFICE OF
ATTORNEY GENERAL OF OHIO.

[Cite as In re Election of November 6, 1990 for the Office of Attorney General of
Ohio (1991), 57 Ohio St. 3d 605.]

(No. 90-2544—Submitted January 4, 1991—Decided January 8, 1991.)

MOYER, C.J. This cause originated in this court on the filing of an election contest petition under R.C. 3515.09.

IT IS ORDERED by the Chief Justice, *sua sponte,* that the Secretary of State, Sherrod Brown, is hereby joined as a party to this cause.

Upon consideration of contestor's application to preserve evidence and request for immediate ruling,

IT IS ORDERED by the Chief Justice that, due to the breadth of the allegations in the petition and until further order of the court, the Secretary of State immediately shall order all of the boards of elections of the counties of Ohio to preserve the following items relating to the November 1990 election for the Office of Attorney General:

1. all ballots prepared and provided by the boards of elections for use at the election, whether used or unused;

2. all pollbooks, poll lists or signature pollbooks, and tally sheets; and

3. counter settings on all manual voting machines.

This order shall remain in effect until the issues before the court are more narrowly defined.

IT IS FURTHER ORDERED that the Secretary of State shall order the Mahoning County Board of Elections to secure and permit the inspection of materials relating to the November 1990 election for the Office of Attorney General in accordance with a proposal agreed to by the parties, modified and approved by the Chief Justice as follows:

1. The Secretary of State shall assign two persons to attend all inspections of Mahoning County election materials by the parties to this cause, upon proper notice thereof. In the event only one employee assigned by the Secretary of State is present, the parties may waive the presence of the other employee until he or she arrives, but all activities involving physical inspection of materials must be undertaken in the presence of the Secretary of State's employee.

2. The Secretary of State shall immediately order the Mahoning County Board of Elections to place in its ballot storage room all ballots, used and unused, ballot stubs, tally sheets, pollbooks, poll lists or signature pollbooks, together with all materials and supplies delivered to the board of elections pursuant to R.C. 3505.31, as well as voting equipment and worksheets, calibration results, or other materials used or created in connection with operating such equipment during any count of the votes in the Attorney General race, including contracts and all election reports and magnetic storage materials. No person may enter the ballot storage room without advance consent of each contestant or his counsel.

3. The Secretary of State shall order that two new secure locks with different keys be installed on the door to the ballot storage room. The number of keys to each lock shall not exceed two, and each key shall be numbered sequentially. Each key shall be further

marked so as to prohibit reproduction. One key to each lock shall be deposited with the court. A key to one of the locks shall be given to counsel for contestor and a key to the other lock shall be given to counsel for contestee. All other locks on that door shall remain intact, and keys to those locks shall be secured as follows: a single key to one lock shall be held by the Chairman of the board of elections (a Democrat) or his designee, and a single key to the other lock shall be held by the Vice Chairman (a Republican) or his designee. All other keys to those locks shall be deposited with the court for the duration of this contest. The board of elections shall ensure that personnel are available to permit access to the parties as soon as possible after notice that an inspection is desired, and shall instruct such personnel to assist the contestants in such inspection.

Each contestant may designate a repository in Mahoning County, where keys assigned to that contestant's counsel may be kept.

4. The electronic security system shall remain intact, but it shall be deactivated or its code shall be used by board of elections personnel to permit entry at any time the parties require access to the room.

5. The board of elections shall make its best efforts to secure the optical scanning devices conveniently elsewhere on the premises of the board of elections. They shall be covered, and the covering shall be sealed in some manner which will show if the seal is removed or otherwise bothered.

6. Access to the materials in the storage room shall be given to either party at all times during the board of elections' normal working hours. Further, either party may have access before or after normal working hours, but the party requiring such access shall reimburse the board of elections for incremental costs incurred by the board of elections. Either contestant may bring video or still cameras to use at any inspection.

7. Each contestant shall give the other contestant notice of its intention to inspect the materials as far in advance as possible, but in no less than four hours, unless waived by the other parties. The other contestant shall be entitled to bring as many people to such inspection as are named in the notice described below. However, not later than four hours after actual receipt of notice that either contestant has requested access to the materials and machines, at least one representative of each contestant and the Secretary of State shall present himself or herself at the board of elections and shall remain there unless relieved by another such representative until the inspection is concluded. The inspection may begin, even if some of the persons who that contestant is permitted to bring are not yet present.

Notice required under this paragraph may be written, telecopied, or verbal. In any case, such notice shall contain a description of the number of persons that party intends to bring and a description of the traditional area of expertise of any expert or consultant who is coming. This designation shall not operate to limit the testimony any such consultant may give in this case.

Upon request by either party to enter the room, the other party and appropriate personnel from the board of elections shall appear at the time noted and open the lock for which he or she is responsible. Thereafter, the other party's representatives shall remain in the storage room as materials are moved in or out, and in the vicinity while the requesting party inspects materials. The board of elections representative shall remain in the vicinity at all times during such inspection. It shall be appropriate for both parties to inspect materials during this time, irrespective

of which party makes the initial request. The parties shall cooperate in the use of materials during simultaneous inspections.

8. Each party or his representative shall be permitted to see, hold, handle, copy and otherwise engage in a thorough inspection of any materials so long as no such action in any way discloses the identity of any voter, or damages or alters any ballot, or otherwise damages any material or machine. Each party's representative may bring and use assistants, experts, and other consultants to inspect or review any of the materials or equipment. These people may view, hold, handle and otherwise inspect the materials in the same manner as the party's representative. Board of elections personnel shall operate computers or other equipment necessary for any requested inspection, including magnetic storage matters. Either party may specifically direct that ballots, used or unused, be run through any counting machine, or all of them, and the board of elections shall operate such machines for that party.

9. Either party shall be permitted to review and inspect any documents, records or other materials held by the board of elections, or any person contracting with the board of elections, relevant to the contestor's allegations, irrespective of whether such materials are identified in this entry. Such documents and materials expressly include, but are not limited to, contract and bid documents, minutes of meetings of the board of elections and of the county commission during the period between the primary and general elections of 1990, correspondence, and other materials used or created in connection with the 1990 general election.